UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION

ROYCE D. BROOKS,

      Plaintiff,

v.                                                                                            Hon. Sally J. Berens

COMMISSIONER OF SOCIAL SECURITY,                       Case No. 1:20-cv-00054

      Defendant.

_____/

## OPINION

This is an action pursuant to Section 205(g) of the Social Security Act, 42 U.S.C. § 405(g),

to review a final decision of the Commissioner of Social Security denying Plaintiff's claim for

Disability Insurance Benefits (DIB) under Title II of the Social Security Act. The parties have

agreed to proceed in this Court for all further proceedings, including an order of final judgment.

Section 405(g) limits the Court to a review of the administrative record and provides that if the

Commissioner's decision is supported by substantial evidence it shall be conclusive. The

Commissioner has found that Plaintiff is not disabled within the meaning of the Act. For the

reasons stated below, the Court concludes that the Commissioner's decision is supported by

substantial evidence. Accordingly, the Commissioner's decision is **affirmed**.

### Standard of Review

The Court's jurisdiction is confined to a review of the Commissioner's decision and of the

record made in the administrative hearing process. *See Willbanks v. Sec'y of Health and Human

Servs.*, 847 F.2d 301, 303 (6th Cir. 1988). The scope of judicial review in a social security case is

limited to determining whether the Commissioner applied the proper legal standards in making the

decision and whether there exists in the record substantial evidence supporting that decision. *See*

*Brainard v Sec'y of Health and Human Servs.*, 889 F.2d 679, 681 (6th Cir. 1989). The Court may not conduct a de novo review of the case, resolve evidentiary conflicts, or decide questions of credibility. *See Garner v. Heckler*, 745 F.2d 383, 387 (6th Cir. 1984). It is the Commissioner who is charged with finding the facts relevant to an application for disability benefits, and those findings are conclusive provided they are supported by substantial evidence. *See* 42 U.S.C. § 405(g).

Substantial evidence is more than a scintilla, but less than a preponderance. *See Cohen v. Sec'y of Dep't of Health and Human Servs.*, 964 F.2d 524, 528 (6th Cir. 1992). It is such relevant evidence as a reasonable mind might accept as adequate to support a conclusion. *See Richardson v. Perales*, 402 U.S. 389, 401 (1971); *Bogle v. Sullivan*, 998 F.2d 342, 347 (6th Cir. 1993). In determining the substantiality of the evidence, the Court must consider the evidence on the record as a whole and take into account whatever in the record fairly detracts from its weight. *See Richardson v. Sec'y of Health and Human Servs.*, 735 F.2d 962, 963 (6th Cir. 1984). As has been widely recognized, the substantial evidence standard presupposes the existence of a zone within which the decision maker can properly rule either way without judicial interference. *See Mullen v. Bowen*, 800 F.2d 535, 545 (6th Cir. 1986). This standard affords to the administrative decision maker considerable latitude and indicates that a decision supported by substantial evidence will not be reversed simply because the evidence would have supported a contrary decision. *See Bogle*, 998 F.2d at 347; *Mullen*, 800 F.2d at 545.

### Procedural Posture

Plaintiff applied for Title II benefits on March 28, 2018, alleging that he had been disabled since July 6, 2016. He was 55 years old on his date last insured, which was December 31, 2017. The application was initially denied on September 19, 2018, and he requested a hearing before an administrative law judge (ALJ), which took place on July 25, 2019. On August 15, 2019, ALJ Kevin Himebaugh issued a decision finding that Plaintiff was not disabled at any time between his

alleged onset date and his date last insured. The Appeals Council denied Plaintiff's request for review on December 20, 2019, making ALJ Himebaugh's judgment the decision of the Commissioner. Plaintiff now appeals.

**Analysis of the ALJ's Opinion**

The social security regulations articulate a five-step sequential process for evaluating disability. *See* 20 C.F.R. §§ 404.1520(a-f), 416.920(a-f).[1] If the Commissioner can make a dispositive finding at any point in the review, no further finding is required. *See* 20 C.F.R. §§ 404.1520(a), 416.920(a). The regulations also provide that if a claimant suffers from a nonexertional impairment as well as an exertional impairment, both are considered in determining his residual functional capacity. *See* 20 C.F.R. §§ 404.1545, 416.945.

The burden of establishing the right to benefits rests squarely on Plaintiff's shoulders, and he can satisfy his burden by demonstrating that his impairments are so severe that he is unable to perform his previous work, and cannot, considering his age, education, and work experience,

---

[1]  1. An individual who is working and engaging in substantial gainful activity will not be found to be "disabled" regardless of medical findings (20 C.F.R. §§ 404.1520(b), 416.920(b));

2. An individual who does not have a "severe impairment" will not be found "disabled" (20 C.F.R. §§ 404.1520(c), 416.920(c));

3. If an individual is not working and is suffering from a severe impairment which meets the duration requirement and which "meets or equals" a listed impairment in Appendix 1 of Subpart P of Regulations No. 4, a finding of "disabled" will be made without consideration of vocational factors. (20 C.F.R. §§ 404.1520(d), 416.920(d));

4. If an individual is capable of performing her past relevant work, a finding of "not disabled" must be made (20 C.F.R. §§ 404.1520(e), 416.920(e));

5. If an individual's impairment is so severe as to preclude the performance of past work, other factors including age, education, past work experience, and residual functional capacity must be considered to determine if other work can be performed (20 C.F.R. §§ 404.1520(f), 416.920(f)).

perform any other substantial gainful employment existing in significant numbers in the national

economy. *See* 42 U.S.C. § 423(d)(2)(A); *Cohen*, 964 F.2d at 528. While the burden of proof shifts

to the Commissioner at step five, Plaintiff bears the burden of proof through step four of the

procedure, the point at which his residual functional capacity (RFC) is determined. *See Bowen v.*

*Yuckert*, 482 U.S. 137, 146 n.5 (1987); *Walters v. Comm'r of Soc. Sec.*, 127 F.3d 525, 528 (6th

Cir. 1997).

The ALJ determined that Plaintiff did not engage in substantial gainful activity during the

period from his alleged onset date of July 6, 2016, through his date of last insured of December

31, 2017. (ECF No. 7-2, PageID.38.) The ALJ also determined that, as of the date he was last

insured, Plaintiff had the following severe impairments: obesity, hypertension, bilateral lower

extremity edema, mild degenerative joint disease, right ankle impingement syndrome, and chronic

rectal bleeding. (PageID.39.) The ALJ noted that the Plaintiff had mentioned "pelvic floor

collapse" at the hearing, but that the ALJ had not found specific references to that impairment in

the medical record. The ALJ also noted a number of non-severe impairments. (PageID.39-41.) At

step three, the ALJ found that none of the Plaintiff's impairments or combinations of impairments

met or medically equaled the severity of one of the listed impairments. (PageID.41.)

At step four, the ALJ found that, through the last insured date, Plaintiff had the residual

functional capacity to perform a range of sedentary work, except that:

> he was able to only occasionally climb ramps and stairs and never able to climb
> ladders or scaffolds. The claimant was able to occasionally balance, stoop, kneel,
> crouch, and crawl. He could perform no more than occasional use of foot controls.
> He could tolerate no exposure to unprotected heights. The claimant must be allowed
> to use an assistive device to ambulate to and from the workstation.

(ECF No. 7-2, PageID.42.) Based on that RFC, the ALJ found that Plaintiff was capable of

performing his past relevant work as a convenience store manager through the date he was last

insured, December 31, 2017. (PageID.46.) Therefore, the ALJ found Plaintiff not to be disabled

through his last-insured date. (PageID.47-48.)

## Discussion

### 1.  Substantial Evidence Supports the ALJ's RFC Analysis

Plaintiff argues that substantial evidence did not support the ALJ's RFC analysis. RFC is

an administrative finding of fact reserved to the Commissioner. *See Shepard v. Comm'r of Soc.*

*Sec.*, 705 F. App'x 435, 442 (6th Cir. 2017) ("An RFC is an 'administrative finding,' and the final

responsibility for determining an individual's RFC is reserved to the Commissioner. SSR 96-5p,

1996 WL 374183, at *1-2 (July 2, 1996)."). A claimant's RFC is the most that the claimant can do

after considering the effects of all impairments on the ability to perform work-related tasks. 20

C.F.R. §§ 404.1545(a), 416.945(a). "The ALJ is charged with the responsibility of determining the

RFC based on her evaluation of the medical and non-medical evidence." *Rudd v. Comm'r of Soc.*

*Sec.*, 531 F. App'x 719, 728 (6th Cir. 2013). The ALJ's function is to resolve conflicts in the

evidence.  *See Siterlet v. Sec'y of Health & Human Servs.*, 823 F.2d 918, 920 (6th Cir. 1987).

Plaintiff argues that the ALJ failed to include Plaintiff's need to elevate his legs as part of

his RFC. Br. at 13. On June 29, 2017, Plaintiff went to the hospital with complaints of rectal

bleeding and lower extremity redness and swelling. (ECF No. 7-9, PageID.611.) By July 7, 2017,

he reported significant improvement of the swelling. (ECF No. 7-10, PageID.711.) But his legs

were still swollen and tender to palpation. (PageID.714.) On July 24, 2017, Plaintiff was seen at

Cherry Health for bilateral edema and pain in his lower legs, which was relieved with elevation.

(PageID.699.) Plaintiff also went to Metro Health—University of Michigan on October 6, 2017,

where he was diagnosed with chronic venous stasis dermatitis and bilateral lower leg cellulitis.

(ECF No. 7-13, PageID.1124.) He was prescribed antibiotics and told to elevate his feet at home.

(PageID.1124.) On December 13, 2017, Plaintiff went to Butterworth Hospital with lower extremity pain and swelling. (ECF No. 7-8, PageID.433.) He had normal strength and range of motion, but he had lower extremity redness and weeping on his right shin. (PageID.434-35.) A lower extremity venous duplex scan showed no evidence of acute deep vein thrombosis. (PageID.453.) The attending physician assessed cellulitis of the lower right extremity and provided an IV dose of medication to treat the infection. (PageID.443.) On December 26, 2017, Plaintiff returned to Butterworth Hospital complaining of left hip pain after falling in the shower. (PageID.459.) Plaintiff had mild redness in his lower left leg but no swelling and normal range of motion. (PageID.462.) Plaintiff was offered crutches but declined. (PageID.460.) Plaintiff notes that a few months after the ALJ's decision, in September 2019, an ER doctor again recommended elevation of the legs. Br. at 13 (citing ECF No. 7-3, PageID.132).

Plaintiff testified at the hearing on July 25, 2019, that keeping his legs elevated above his waist was "the main thing that helps." (PageID.72.) The vocational expert who testified at the hearing acknowledged that a need to elevate the legs at waist level or above (such that he would have to push his torso back, making it difficult to do computer work) would be work-preclusive even for sedentary work. (ECF No. 7-2, PageID.89.) However, the ALJ found that Plaintiff's "statements about the intensity, persistence, and limiting effects of his symptoms" were "inconsistent with the medical evidence of record through the date last insured and with the record as a whole." (PageID.43.)

Based on the record before the ALJ, Plaintiff has not met his burden of demonstrating that he was required to elevate his legs at waist level or above such that he was disabled from sedentary work during the insured period. As the ALJ noted, there was evidence that lifting his legs "temporarily" helped relieve his cellulitis and lymphedema. (PageID.43.) However, there is also

evidence that the swelling was intermittent at that time (*see, e.g.,* PageID.460), and the Court will not re-weigh the ALJ's credibility findings. The ALJ's determination of Plaintiff's RFC without inclusion of leg elevation sufficient to preclude sedentary work is supported by substantial evidence.

In addition, Plaintiff claims that the ALJ erred because cane usage is not compatible with light work and argues that Plaintiff's prior work as a convenience store manager was light work, rather than sedentary. Br. at 14. Although the vocational expert initially testified that work as a convenience store manager was light, after Plaintiff's clarification of how he performed that job, she testified that it was sedentary work as performed. (PageID.87.) Plaintiff argues that occasional driving, as he did in his prior work to make bank deposits, makes his prior work light work, rather than sedentary. Br. at 13. But that mischaracterizes the record. The vocational expert testified that "if driving is a major function of your job," "then it's light." (PageID.91.) But she clarified that, "[i]f that's part of your job where you're out driving quite a bit of the day," that would qualify as light work. (*Id.*) Plaintiff testified that his prior work as a convenience store manager required bank deposits every other day. (PageID.86.) After that clarification of how much Plaintiff drove and his statement that he stayed in the office most of the day, she testified that it was sedentary work as performed. (PageID.87.)

Plaintiff also argues that the ALJ did not consider his evidence of pelvic floor collapse and should have made some allowances in the RFC for bathroom access and time off task. Br. at 13-14 (citing PageID.1035, 1151, 206). However, as the Commissioner notes, the earliest record of "pelvic floor laxity" is an August 28, 2018 defecography examination, which is eight months after the relevant period. (PageID.332, 1035.) Likewise, the ALJ noted that there was evidence of rectal bleeding, including an incident in which he was sent home from work during the relevant period,

7

after bleeding through his pants. (ECF No. 7-2, PageID.43.) The ALJ also noted that Plaintiff

reported to Spectrum Health on March 7, 2018, that he had had worsening rectal bleeding for the

previous eight months (which would have stretched back into the relevant period). (PageID.44

(citing ECF No. 7-9, PageID.636).) However, there was insufficient evidence of abdominal

cramping and rectal bleeding before the date last insured to require reversal of the ALJ's

determination not to require accommodation in the RFC.[2] The ALJ properly limited his analysis

to the relevant period.

### 2.   The ALJ Explicitly Considered Plaintiff's Obesity

Plaintiff argues that the ALJ should have deemed him disabled based on his obesity, citing

*Shilo v. Commissioner of Social Security*, 600 F. App'x 956 (6th Cir. 2015). He also argues that

the ALJ did not consider SSR 02-1P. This argument is inconsistent with the ALJ's opinion.

The ALJ properly applied SSR 02-1p in considering Plaintiff's obesity. SSR 02-1p directs

ALJs to consider obesity's effects when evaluating a claimant's disability. *Coldiron v. Comm'r of

Soc. Sec.*, 391 F. App'x 435, 442 (6th Cir. 2010). The Sixth Circuit has observed that SSR 02-1p

does not mandate "any particular procedural mode of analysis for obese disability claimants." *Id*.

at 443 (quoting *Bledsoe v. Barnhart*, 165 F. App'x 408, 412 (6th Cir. 2006)). It has also recognized

that an ALJ must "consider the claimant's obesity, in combination with other impairments, at all

stages of the sequential evaluation." *Nejat v. Comm'r of Soc. Sec.*, 359 F. App'x 574, 577 (6th Cir.

2009). However, the impact of obesity must be examined in the context of the claimant's medical

record because it "may or may not increase the severity or functional limitations of the other

impairments." SSR 02-1p, 2002 WL 34686281, at *6.

---

[2] In a Spectrum Health progress note dated October 26, 2018, Plaintiff reported to a physical
therapist that his fecal leakage had begun after his hemorrhoid surgery in April 2018, which was
after the date last insured.

Here, the ALJ explicitly considered Plaintiff's obesity in his analysis, stating that Plaintiff's body mass index consistently exceeded 40. (PageID.42 ("In fact, in April 2018, the claimant was five feet and 11 inches tall and weighed 367 pounds with a BMI of 51.19.").) The ALJ noted that Plaintiff's "obesity is a contributing impairment limiting the claimant to performing a range of sedentary work activities during the relevant period through the date last insured." (PageID.42.)

Plaintiff has not explained why the ALJ should have further limited his RFC based on his obesity. He notes his venous stasis dermatitis and edema, but, as discussed above, substantial evidence supports the ALJ's limitation of the Plaintiff to sedentary work due in part to those ailments. There are no treatment records during the relevant period suggesting that his obesity caused limitations beyond the sedentary RFC. "[W]hen 'there is no evidence in the record, of any functional limitations as a result of . . . obesity that the ALJ failed to consider,' a remand for further resolution of this issue is unnecessary." *Kocher v. Comm'r of Soc. Sec.*, No. 2:14-cv-2263, 2015 WL 7307998, at *5 (S.D. Ohio Nov. 20, 2015), *report and recommendation adopted*, 2015 WL 9489750 (S.D. Ohio Dec. 30, 2015) (quoting *Burch v. Barnhart*, 400 F.3d 676, 684 (9th Cir. 2005)).

### 3.   Whether the Court Should Consider Post-hearing Evidence

Finally, Plaintiff argues that the Court should issue a sentence-six remand under 42 U.S.C. § 405(g) so that the ALJ can consider additional evidence of an examination at the University of Michigan Hospital that took place 20 months after the last insured date and ongoing ER records. The Court declines that invitation.

This Court cannot consider evidence that was not presented to the ALJ. *See Cline v. Comm'r of Soc. Sec.*, 96 F.3d 146, 148 (6th Cir. 1996); *Bass v. McMahon*, 499 F.3d 506, 512-13 (6th Cir. 2007). However, under sentence six, "[t]he court . . . may at any time order additional

9

evidence to be taken before the Commissioner of Social Security, but only upon a showing that there is new evidence which is material and that there is good cause for the failure to incorporate such evidence into the record in a prior proceeding . . . ." 42 U.S.C. § 405(g). Thus, if Plaintiff can demonstrate that this evidence is new and material and that good cause existed for not presenting it in the prior proceeding, the Court can remand the case for further proceedings in which this new evidence can be considered. *Cline*, 96 F.3d at 148. Plaintiff bears the burden of making this showing. *See Hollon ex rel. Hollon v. Comm'r of Soc. Sec.*, 447 F.3d 477, 483 (6th Cir. 2006).

"A claimant shows 'good cause' by demonstrating a reasonable justification for the failure to acquire and present the evidence for inclusion in the hearing before the ALJ." *Foster v. Halter*, 279 F.3d 348, 357 (6th Cir. 2001). To show good cause a claimant is required to detail the obstacles that prevented him from entering the evidence in a timely manner. *Bass*, 499 F.3d at 513. "The mere fact that evidence was not in existence at the time of the ALJ's decision does not necessarily satisfy the 'good cause' requirement." *Courter v. Comm'r of Soc. Sec.*, 479 F. App'x. 713, 725 (6th Cir. 2012). For a claimant to satisfy the burden of proof as to materiality, "he must demonstrate that there was a reasonable probability that the [Commissioner] would have reached a different disposition of the disability claim if presented with the new evidence." *Sizemore v. Sec'y of Health & Human Servs.*, 865 F.2d 709, 711 (6th Cir. 1988).

Plaintiff has not met that requirement. As to good cause, a claimant's failure to obtain otherwise-available medical evidence before the hearing does not constitute the "good cause" required under 42 U.S.C. § 405(g). *See Oliver v. Sec'y of Health & Human Servs.*, 804 F.2d 964, 966 (6th Cir. 1986) (finding that the claimant did not have good cause for failing to obtain additional medical tests in advance of his administrative hearing before the ALJ); *Key v. Heckler*, 754 F.2d 1545, 1551 (9th Cir. 1985) (explaining that the good cause requirement would be

meaningless if every time a claimant lost before the agency he was free to seek out a new expert witness who might better support his position). Plaintiff argues he could not have produced that information until after the examination, which took place after the hearing. But he does not explain why he did not ask the ALJ for additional time to submit the treatment record.

Even if there were good cause, Plaintiff has not demonstrated why a treatment note dated 20 months after the relevant period that further discussed an ongoing issue but did not relate back to the insured period gives rise to a reasonable probability of a different outcome, particularly given the information already in the record. Likewise, Plaintiff has not explained why the emergency room reports were not cumulative of other information in the record. Br. at 15-16. Plaintiff has not met his burden of demonstrating materiality.

## CONCLUSION

For the reasons articulated herein, the Court concludes that the ALJ's decision is supported by substantial evidence. Accordingly, the Commissioner's decision is **affirmed**. A judgment consistent with this opinion will enter.

Dated: March 29, 2021                                  /s/ Sally J. Berens
                                                       SALLY J. BERENS
                                                       U.S. Magistrate Judge